Dwight LOOK, Appellant,

v.

Eldridge C. MOBLEY and Patricia Mobley, Appellees.

Paul BORDALLO, Appellant,

v.

Eldridge C. MOBLEY and Patricia Mobley, Appellees.

No. 17767.

United States Court of Appeals Ninth Circuit.

Sept. 24, 1963.

Turner, Barrett & Ferenz, Howard G. Trapp and Walter Ferenz, Agana, Guam, for appellant Look.

Arriola, Bohn & Gayle, John A. Bohn, Charles J. Williams and Robert B. Looby, Benicia, Cal., and Gerald Ellersdorfer, San Francisco, Cal., for appellant Bordallo.

Schofield, Hanson, Bridgett, Marcus. & Jenkins, Thomas M. Jenkins and John A. Judge, San Francisco, Cal., and E. R. Crain, Agana, Guam, for appellees.

Before POPE, HAMLIN and DUNIWAY, Circuit Judges.

DUNIWAY, Circuit Judge.

This litigation arises out of an automobile accident on Guam. The facts as found by the trial court are not seriously disputed.[1] On February 22, 1961, appel--

---

1. Appellant Look does contend that the trial court could not find that Mrs. Mobley was a passenger in her husband's car because no evidence was offered on that point. We do not understand Look's argument to relate to Mrs. Mobley's stat-

lee Eldridge C. Mobley was driving north along Guam Route 4, with his wife, appellee Patricia Mobley, as passenger. Their car collided with one driven by Daniel M. Tenorio, a defendant below who has not appealed. Before trial it was stipulated by all parties that if Tenorio be found negligent, Mobley should have damages in the amount of $5,000 for personal injuries and $1,200 property damage, and Mrs. Mobley $20,000 for personal injuries. The car driven by Tenorio was registered in the name of appellant Dwight Look. On January 18, 1961, he had sold the car to appellant Paul Bordallo, giving him the endorsed certificate of ownership. On that day, or a day later, Bordallo sold the car to Tenorio, giving him the ownership certificate endorsed by Look but not adding his own endorsement. Neither Look nor Bordallo ever reported the two transfers to the Department of Finance, Government of Guam.

The trial court found that Tenorio's negligent driving caused the accident, and this finding is not disputed on appeal. The court entered judgment against Tenorio in the amounts stipulated. The court also found and concluded that Look and Bordallo were liable as owners under the Guam imputed negligence statute (Guam Gov't Code § 23504 (1961)), and gave judgments against them conditioned on Tenorio's failure to satisfy the judgment against him.[2] These conditional judgments each totalled $11,200, since the maximum amount recoverable under section 23504 for injury to any person is $5,000.

Section 23504(a) in pertinent part provides:

"Every owner of a motor vehicle is liable and responsible for the death of or injury to person or property resulting from negligence in the operation of such motor vehicle * * * by any person using or operating the same with the permission, express or implied, of such owner, and the negligence of such person shall be imputed to the owner for all purposes of civil damages."

Each appellant contends that he is not an "owner" within the meaning of the statute. We agree, and conclude that the trial court was in error.

Were this the sale of ordinary goods instead of an automobile, neither appellant could legally be termed an owner. In both transactions possession and the additional indicium of ownership, the ownership certificate, were turned over to the buyer, and no circumstances suggest an intention that title was not then to pass. (See Guam Civil Code, § 1738 (1953)) Appellees argue, however, that the Guam vehicle code enlarges the common-law concept. All parties acknowledge that the Guam statutes involved derive from California law. (See also United States v. Johnson, 9 Cir., 1950, 181 F.2d 577)

The Guam vehicle code provides for what might be termed dual paper titles. "Upon registering a vehicle, the Department of Finance shall issue a certificate of ownership to the legal owner and a registration card to the owner, or both to the owner if there is no legal owner of the vehicle." (Guam Gov't Code, §

us (whether passenger, guest, or what have you), since this would make no difference in Tenorio's liability or that of appellants, in this case; the argument appears to be that it was not proved that Mrs. Mobley was in the car at the time of the accident. It is true that in his brief testimony Mobley did not mention that his wife was in the car, and Mrs. Mobley was not put on the stand. However, a police officer testified: "Upon my arrival, I discovered two vehicles on the middle of the highway. * * * The oth-

er vehicle is a '57 Ford, identified the operator as Mr. Mobley and his wife on the passenger side. They were all injured." It is perhaps conceivable that Mrs. Mobley took herself to the scene of the accident by some other means, injured herself, and then crawled into Mobley's car after the accident occurred, but we do not feel compelled to toy with such fantasies, particularly in light of the stipulation recited in the text.

2. See Guam Gov't Code § 23504(c), (d).

23314 (1961)) A "legal owner" is defined as "a person holding the legal title to a vehicle under a conditional sale contract[,] the mortgagee of a vehicle, or the renter or lessor of a vehicle to the Government * * *." (Guam Gov't Code, § 23001 (pp) (1961)) An "owner" is defined as "a person having all the incidents of ownership including the legal title of a vehicle whether or not such person lends, rents or pledges such vehicle; the person entitled to the possession of a vehicle as the purchaser under a conditional sale contract; the mortgager of a vehicle; or the government, when entitled to the possession and use of a vehicle under a lease * * *." (Guam Gov't Code, § 23001(w) (1961)) Put more simply, an "owner" under the Guam vehicle code is either a person with all rights in the automobile, in which case he holds both the registration card and the certificate of ownership, or someone who has some rights, including use, but whose interest is subject to a defined interest held by another, in which case only the registration card is in his name and possession, the certificate of ownership being in the name and possession of the other, who is called the "legal owner."

These definitions show that appellant Look was an "owner" within the meaning of the imputed negligence statute up to the point when he sold the car, but they in no way suggest that he continued to be an "owner" for the purposes of that statute after he sold. Insofar as they are applicable, they suggest the opposite. The definitions quoted above are to govern the construction of any statute in the vehicle code "unless the context otherwise requires * * *." (Guam Gov't Code, § 23001 (1961)) Giving the definition of "owner" the broadest possible reading, by equating "legal title" (a phrase nowhere defined in the code) with registered title, instead of with a common-law interpretation of ownership, we come up with no more than that an owner under section 23504 is a "person having all the incidents of ownership including the [registered] legal title of a vehicle." Look, after his sale to Bordallo, had none of the incidents of ownership, except the registered legal title. Bordallo, after his sale to Tenorio, had neither incidents of ownership nor registered legal title.

However, the applicability of the general definition of "owner" to the imputed negligence section is questionable. The general definition of "owner" includes outright owners and time-buyers, but excludes conditional sellers and chattel mortgagees, terming these latter "legal owners." Section 23504(a) speaks only of "every owner," yet subdivision (f) expressly excludes from its coverage conditional sellers and chattel mortgagees out of possession. If section 23504 by the phrase "every owner" had meant only an "owner" as defined in section 23001 (w), such an exclusionary clause would be unnecessary. Of course this is not to say that a broader meaning of "owner" in the imputed negligence statute would be so broad as to place liability on appellants. The most that can be said of both the "definitions" section and the imputed negligence statute is that they are an unclear blend of common-law concepts and the vehicle registration scheme. The answer to our problem must be sought in the statutes providing for the transfer of automobile registration.

Both the certificate of ownership and the registration card are to contain certain data on ownership and on the automobile, but only on the certificate of ownership is it required that there be "upon the reverse side forms for notice to the Department of a transfer of the title or interest of the owner or legal owner and application for such transfer by the transferee." (Guam Gov't Code, §§ 23315, 23316 (1961)) Upon sale, "the person whose title or interest is to be transferred shall write his signature and write the date of transfer after his signature, and the transferee shall write his signature and address, in the appropriate spaces provided upon the reverse side of the certificate of ownership issued for such vehicle." (Guam Gov't Code, § 23337 (1961)) The seller is legally obli-

gated to endorse and deliver the certificate of ownership to the buyer. (Guam Gov't Code, § 23338 (1961)) Presumably there is also an obligation to hand over the registration card, although this is not specified, since the new owner would require it for re-registration, unless he could explain its absence. (See Guam Gov't Code, §§ 23340–23343 (1961)) The Department of Finance issues a new certificate of ownership, and a new registration card, to the purchaser upon receipt of the properly endorsed old certificate, the "proper registration card," and a transfer fee. (Guam Gov't Code § 23340 (1961)) Section 23339(a) further provides:

"Whenever the owner of a vehicle registered under this title sells or transfers his title or interest in, and delivers the possession of, the vehicle to another, the owner shall immediately notify the Department of Finance of such sale or transfer giving the date thereof, the name and address of such owner and of the transferee and such description of the vehicle as may be required in the appropriate form provided for such purpose by the Department."

All the registration and transfer provisions were the law of Guam at the time of the post-war codification in 1952.[3] The imputed negligence statute was enacted in 1957. (Public Law 48, 4th Guam Legis., 1st Sess., Aug. 15, 1957)

Appellees' argument from these statutes is not crystal-clear, but they appear to contend that appellant Look remains liable because the car is registered in his name, or, at the least, that he is liable because he has not tried to notify the Department of Finance of the transfer.

Appellant Bordallo is said to be liable on "public policy" grounds as a transferee of Look, or, apparently, because he neither endorsed the ownership certificate nor notified the Department of Finance of the transfer.

■ We decline to give this reading to the imputed negligence statute. We would tend to favor appellants because it is never clearly stated that liability endures so long. We think that a legislature, when enacting a statute imposing liability both unknown at common law and of a type which a layman is likely to view as unexpected, is required to be somewhat more explicit than is the Guam vehicle code. Imputed negligence statutes, being in derogation of the common law, are strictly construed (See Dodson v. Imperial Motors, Inc., 6 Cir., 1961, 295 F.2d 609, 613) A simple one-sentence provision in section 23339 or section 23504 would have been all that was necessary, but no such provision appears. However, we rest our decision upon a narrower ground: the partial adoption by Guam of a more comprehensive California registration system.

California has a similar scheme of dual paper titles, an identical imputed negligence statute (Cal. Vehicle Code § 17150),[4] and an identical statute requiring notice to the Department of Motor Vehicles by a seller of an automobile. (Cal. Vehicle Code § 5900) But California law also includes two provisions not found in the Guam vehicle code. Cal. Vehicle Code, section 5600, provides:

"No transfer of the title or any interest in or to a vehicle registered under this code shall pass, and any attempted transfer shall not be effective, until the parties thereto have

3. See generally Guam Gov't Code, Title 24 (1952). Minor amendments were made to sections 23337 and 23343 in 1958, but they are not pertinent here.

4. In 1957 when the Guam legislature enacted its imputed negligence statute, the 1935 California Vehicle Code was the codification in use. This was superseded by the present codification in 1959.

Changes in the numbering of the statutes discussed in the text are as follows:

| 1959 Vehicle Code | 1935 Vehicle Code |
|---|---|
| Section 17150 | Section 402(a) |
| Section 5900 | Section 177(a) |
| Section 5600 | Section 186(a) |
| Section 5602 | Section 178 |

The 1959 codification made no pertinent changes in the California law as it was in 1957, beyond the renumbering.

fulfilled either of the following requirements:

"(a) The transferor has made proper endorsement and delivery of the certificate of ownership and delivery of the registration card to the transferee as provided in this code and the transferee has delivered to the department or has placed the certificate and card in the United States mail addressed to the department when and as required under this code with the proper transfer fee and thereby makes application for a transfer of registration * * * [with certain exceptions not relevant here.]

"(b) The transferor has delivered to the department or has placed in the United States mail addressed to the department the appropriate documents for the registration or transfer of registration of the vehicle pursuant to the sale or transfer except as provided in Section 5602."

Section 5602 provides:

"An owner who has made a bona fide sale or transfer of a vehicle and has delivered possession thereof to a purchaser shall not by reason of any of the provisions of this code be deemed the owner of the vehicle so as to be subject to civil liability for the operation of the vehicle thereafter by another when the owner in addition to the foregoing has fulfilled either of the following requirements:

"(a) When he has made proper endorsement and delivery of the certificate of ownership and delivered the certificate of registration as provided in this code.

"(b) When he has delivered to the department or has placed in the United States mail, addressed to the department, either the notice as provided in Section 5900 or Section 5901 or appropriate documents for

registration of the vehicle pursuant to the sale or transfer."

Under the California statutes appellant Look would not be liable if he had fully complied with section 5602(a); the record does not show whether he made proper delivery of the registration card.[5] It would seem that appellant Bordallo would be liable under California law, for he has failed to make proper endorsement of the certificate of ownership, as required by section 5602(a), and there was no attempt to inform the government of the transfer so as to come within sections 5600 and 5602(b). (See Larson v. Barnett, 1950, 101 Cal.App.2d 282, 225 P.2d 297)

But it is noteworthy that in two ways the California statutory scheme goes far beyond that of Guam. To some extent common-law title does not pass until an attempt is made to notify the government of the change in ownership (§ 5600)—but in Guam law there is no such explicit recognition that ownership is so closely tied to the registration scheme. Even without notice to the government, a California seller can cut off his liability under the imputed negligence statute by making a complete delivery of the car and the paper titles (§ 5602(a))—but there is no comparable Guam statute whereby a seller can limit his liability.

We note also that a Guam statute upon which appellees rely, requiring notice by the seller to the government department, is duplicated by Cal. Vehicle Code § 5900 —yet section 5900 does not mean that liability under the imputed negligence statute continues until notice is given, because the seller can relieve himself of this liability by making complete delivery under section 5602(a), though he might be subject to a fine for failure to comply with the notice statute. (See Woods v. Eastridge, 1950, 99 Cal.App.2d 625, 222 P.2d 296)

In ascribing a legislative purpose to this piecemeal adoption by Guam of the

5. In discussing the transfer from Look to Bordallo, Bordallo remarked: "I don't believe I ever even saw the registration upon the vehicle, just the ownership that I got from Mr. Look."

California Vehicle Code, we must choose between an intent to make liability more extensive than in California, and an intent to make it less extensive. If sellers are to be liable so long as the automobile is registered in their name, as appellees suggest, their liability will be incalculably greater. If sellers are to be liable until notice has been sent the Department of Finance, a more rational cut-off point also suggested by appellees, then a seller who would end his liability under California law by turning over possession and the papers to a buyer would remain liable in Guam. Conversely, if a seller's liability is to cease upon the passage of common-law title, the most logical remaining dividing line under the Guam statutes, then Guam sellers turning over the automobile and improperly endorsed papers will escape a liability which California law would impose.

We think the latter is the more likely intent. If the Guam legislature, aware that liability under the California Vehicle Code extended beyond the point where an "owner" ceased to be such at common law, deliberately chose not to adopt those parts of the Code linking the passage of title and the cessation of liability to certain formalities not required for a common-law transfer, it is likely that the legislature intended less, not greater, liability. This conclusion is reinforced by the fact that, if we wished to side with appellees, this Court could cut off imputed liability with equal ease at any one of a number of points, by relying on the notice statute, or on the re-registration statute, or on the statute requiring endorsement of the ownership certificate. This, we think, is to thrust too much of the legislative function upon the courts.

■■ The purpose of section 23504 itself can hardly be to give an injured party a crack at every person through whose hands the automobile has passed; the legislature has indicated otherwise by exempting conditional vendors and chattel mortgagees out of possession. We think that the primary purpose of section 23504 is to allow an injured party

recourse against an owner who is in a position to control the use of his property, and to insure against the harm it causes. (Cf. Burgess v. Cahill, 1945, 26 Cal.2d 320, 158 P.2d 393, 159 A.L.R. 1304, and concurring opinion of Carter, J., at 26 Cal.2d 325, 158 P.2d 395, 159 A.L.R. 1304). Neither appellant, after he sold the car, was in such a position. If section 23504 is to serve a secondary purpose, as a sanction to force compliance with the transfer and notice requirements of the vehicle code, the legislature must make this secondary purpose clearer; and we note that the legislature has already declared that "Except in cases where a different punishment is provided * * *, every person who fails or refuses to comply with or violates any provision * * * [of the vehicle code] is guilty of a misdemeanor punishable by a fine of not more than $250.00 or by imprisonment for not more than ninety days or by both such fine and imprisonment." (Guam Gov't Code, § 23408 (1961))

The judgments are reversed.